UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| YAAKOV YARMARK, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | No: 22-2398 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CLASS ACTION COMPLAINT |
| RTG CUSTOM SUPPLY, LLC dba TRANSITIONS2EARTH | ) ) ) | DEMAND FOR JURY TRIAL |
| Defendant. | ) x | |

Plaintiff, Yaacov Yarmark ("Plaintiff"), by and through his attorneys, on behalf of himself and all others similarly situated, for his Complaint states as follows:

## INTRODUCTION

1. Defendant RTG Custom Supply LLC, tradename "Transitions2earth®" (at times "T2E") sells, among an array of consumer products on its ecommerce storefront, plastic cutlery, utensils and serving ware made of polyethylene ("Cutlery").

2. T2E advertises a multitude of Cutlery online on its proprietary website (https://transitions2earth.com) and elsewhere, as "biodegradable:"

1




## Transitions2earth® Biodegradable Cutlery

———

Transitions2earth® premium quality utensils and cutlery are great for weddings, events, parties, picnics and more since they are premium quality, heat resistant and biodegradable.  Our Transitions2earth® premium quality utensils and cutlery are more durable, higher quality and lower priced than other eco-friendly products and their easy disposal keeps life simple.





Transitions2earth Biodegradable EcoPure Forks - Box of 500  —  **$24.99**

Transitions2earth Biodegradable EcoPure Spoons - Box of 500  —  **$24.99**

Transitions2earth Biodegradable EcoPure Knives - Box of 500 - Plant a Tree With Each Item Purchased!  —  **$24.99**



Transitions2earth Biodegradable EcoPure Lightweight Spoons - Box of 1000 — **$26.99**



Transitions2earth Biodegradable EcoPure Lightweight Forks - Box of 1000 - Plant a Tree With Each Item Purchased! — **$26.99**



Transitions2earth Biodegradable EcoPure Lightweight Knives - Box of 1000 - Plant a Tree With Each Item Purchased! — **$26.99**



Transitions2earth Biodegradable EcoPure Cutlery - Combo Box of 400 - Plant a Tree With Each Item Purchased! — **$21.99**

3. The same or substantially same "biodegradable" claim vis-a-vis Cutlery appears on Walmart, eBay, and other ecommerce sites frequented by the purchasing public . . . for example:

- Transitions2earth Biodegradable 6-in-1 Heavyweight Cutlery/Utensil Packs-50 C...[1]

---

[1]https://www.ebay.com/itm/313936249117?epid=555202185&hash=item49180f011d:g:a RUAAOSwyIhiRGAL

3

- Transitions2earth Biodegradable EcoPure Knives - Box of 500[2]

- Transitions2earth Biodegradable EcoPure Spoons - Box of 500[3]

4. As shown in ¶2 above, the word "Biodegradable" appears prominently and in close range to every product representation for Cutlery.

5. All Cutlery, regardless of where or how purchased, and regardless of the exact packaging used, are advertised and/or prominently represented to be  "Biodegradable" (collectively "Claim" or "Biodegradable Claim").

6. Cutlery is customarily disposed of in landfills.

7. The Federal Trade Commission ("FTC") has conducted extensive consumer/product research and, based thereon, has enacted this rule: "Unqualified Degradable Claims for items that are customarily disposed in landfills are deceptive because these locations do not present conditions in which complete decomposition will occur within one year."   12 CFR Part 260, §260.8(c).

8. Cutlery manufactured with so-called EcoPure® technology, as is

---

[2] https://www.walmart.com/ip/Transitions2earth-Biodegradable-EcoPure-Knives-Box-of-500/173624716
[3] https://www.amazon.com/Transitions2earth-Biodegradable-EcoPure-Spoons-Purchased/dp/B002YH1A0Q/ref=sr_1_5?crid=1WB8SJ5ADFT8T&keywords=transitions+2+earth&qid=1649258645&sprefix=transitions2earth%2Caps%2C74&sr=8-5

instant Cutlery, cannot and does not decompose within even five (5) years in landfills (let alone in one year, i.e. the FTC rule). *ECM Biofilms, Inc. v. FTC*, 851 F.3d 599, 610 at n.6 and accompanying text (6th Cir. 2017), aff'g *In re ECM BioFilms, Inc*., 2015 FTC LEXIS 253, 2015-2 Trade Cas. (CCH) P79,338 (F.T.C. October 11, 2015).

9. FTC official guidance  is clear that "[m]arketers should not make broad, unqualified general environmental benefit claims like 'green' or 'eco-friendly.'  Broad claims are difficult to substantiate, if not impossible."  https://www.ftc.gov/tips-advice/business-center/guidance/environmental-claims-summary-green-guides

10. T2E violates Wash. Rev. Code ("WCPA")  §§ 19.86.010 et seq. by advertising, labeling and selling Cutlery, deceptively, pursuant to the Biodegradable Claim.

11. Plaintiff seeks equitable and injunctive relief, including corrections to labeling, packaging, advertising and marketing; and the recovery of damages as authorized by  WCPA  §19.86.090.

**PARTIES**

12. Defendant is a limited liability company, formed under the laws of Washington State, on or about 2006, with principal offices at 4201 Aurora Ave N Unit 200, Seattle, WA 98103-7395.

13. Defendant's Principal member is Randal Bennett who has had several addresses over in the past many years, all in the State of Washington.

14. T2E has a Board of Governors, all of whom reside in the State of Washington :

GOVERNORS

| Title | Type | Entity Name | First Name | Last Name |
| --- | --- | --- | --- | --- |
| GOVERNOR | INDIVIDUAL | | AMMI | BORENSTEIN |
| GOVERNOR | INDIVIDUAL | | JAN | BENNETT |
| GOVERNOR | INDIVIDUAL | | RANDAL | BENNETT |
| GOVERNOR | INDIVIDUAL | | VIVIAN | SCHEIDT |

15. On reasonable information and belief, therefore, Plaintiff alleges that no member of Defendant LLC is a citizen of New York.

16. Plaintiff resides in Brooklyn, New York and is a citizen of the State of New York.

## JURISDICTION AND VENUE

17. Claims asserted herein arise under the laws of the State of Washington because Plaintiff, each class member and Defendant are bound by a choice of law clause in  Defendant's Terms of Service, i.e. Washington law.

18. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and

6

this is a class action in which certain of the Class members and Defendant are citizens of different states.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because many of the acts and transactions alleged herein, including Plaintiff's purchase from Defendant, occurred in substantial part in this District.

## ESSENTIAL FACTS

20. Plaintiff purchased a package of Cutlery from T2E's proprietary website on March 14, 2022:

 **Transitions2earth Biodegradable EcoPure Cutlery - Combo Box of 400**

Quantity: 1
Total: $21.99

Subtotal: $21.99
Shipping: $13.56
Total: $35.55

21. Defendant's advertisement to Plaintiff stated "Biodegradable" on a multitude of occasions online, both on the pictured packaging and in text, and Plaintiff relied on such representations in believing Cutlery to be, in fact, biodegradable, i.e. 100% transition to earth in a short

7

time, and would not have purchased the product but for said

misrepresentation.

22. The container of Cutlery itself, as received, reaffirmed the advertised

text, with clams of "Biodegradable," on the front, rear and sides

23. T2E did not possess prior substantiation that Cutlery would ever

biodegrade, let alone in one (1) year or five (5) years.

24.  Plaintiff's subsequent inquiry established that polyethylene-plastic

Cutlery manufactured with EcoPure technology is not

"biodegradable."

25.  Bio-Tec Environmental LLC, which manufactures EcoPure, does not

itself claim that the use of this additive will render plastic

"biodegradable."   https://www.goecopure.com

26. Plaintiff is sensitive to the "green footprint," purchased Cutlery for

that reason, and is disappointed and takes great umbrage at false

advertising of Cutlery as biodegradable.

27.  Upon information and belief, at all times material hereto, T2E

controlled, operated, and monitored its storefront activities on the

internet, and created and provided images of packaging and

advertising copy to various platforms.

## SUBSTANTIVE ALLEGATIONS

28.  Cutlery is made of a plastic known as polyethylene.  All
polyethylene is man-made and chemical, not natural, with a chemical
formula of  $(C2H4)n$.  Ethylene, the precursor of polyethylene, is
ordinarily obtained from petroleum or natural gas.  Polyethylene (PE)
is a made by the chemical reaction of ethylene molecules in the
presence of a catalyst.  So-called EcoPure technology exists to
enhance the degradability of fossil-based plastics, but does not render
plastic biodegradable.

29.  Americans generate about 32 million tons of plastic waste every
year, more than half of which ends up in landfills.

30.  Landfills continue to be the dominant method for managing
discarded waste in the United States.

31.  Due to their recalcitrant nature, plastics pose a growing disposal and
environmental pollution problem.

32.  In response to consumer demand, various biomass and other
materials have been introduced to improve the degradability of
plastics. "Plants naturally produce many polymers, such as starch or

cellulose, and these have been exploited for plastics production."[4]

Bio-based plastics can be completely degraded in landfills, composters or sewage treatment plants by the action of naturally occurring micro-organisms.

33.  T2E claims to use an additive, i.e. EcoPure technology, that affects 100% biodegradation of conventional petroleum-based plastics on par with biobased plastics.

34.  This Claim of biodegradability is deceptive and false.  Not only is Cutlery not biodegradable, similar products using a similar additive known as ECM were held by a definitive FTC ruling not to biodegrade in nine (9) months to five (5) years.[5]

35. T2E's packaging, pictured above in ¶2, states that Cutlery are

---

[4] B.P. Mooney, The second green revolution? Production of plant-based biodegradable plastics, Biochem. J. (2009) 418, 219–232 (Printed in Great Britain).

[5] "The Commission held ECM liable for two other representations, neither of which is raised on appeal. First, ECM claimed that plastics manufactured with its additive would biodegrade in a landfill within nine months to five years. The ALJ ruled that this claim was false and unsubstantiated, and ECM did not appeal that ruling to the Commission, though it did argue that this claim was not material. The Commission rejected this argument, holding that the claim was material. ECM has not appealed the Commission's finding."

*ECM Biofilms, Inc. v. FTC*, 851 F.3d 599, 610 n.6 (6th Cir. 2017)

"biodegradable," but the representation is culpable for the same reasons and to the same extent as the FTC found in *ECM Biofilms*.

36.  The Sixth Circuit's *ECM* ruling, sustaining the FTC Commission ruling below, addressed the precise question presented here:

> Accordingly, we limit our analysis to whether substantial evidence supports the Commission's finding that ECM's unqualified biodegradability claim did, in fact, convey the implied claim that ECM plastic completely biodegrades within five years.

*ECM Biofilms, Inc. v. FTC*, 851 F.3d 599, 610 (6th Cir. 2017).

## T2E  PRODUCT LABELING AND ADVERTISING

37.  Defendant  sells plastic Cutlery that it represents in ecommerce (where Plaintiff shopped) and elsewhere to be unqualifiedly biodegradable.  See ¶¶2 *supra.*

38.  T2E  creates promotional, marketing and advertising copy that is used, essentially unchanged in material parts, on various websites.

39.  Wherever a consumer may look for information regarding Cutlery, the same deceptive and false Biodegradable Claim is featured.  T2E's Biodegradability Claim constitutes  an important product differentiation message calculated to cause consumer decision-making upon false premises.

40.  Reinforcing deceptions are used throughout product packaging as

well throughout defendant's ecommerce media presence. For example, the product title and the "Transitions2earth" tradename represents the concept of biodegradability.

41. The promotion, marketing, advertising and labeling of Cutlery is a flagrant, multi-faceted violation of  WCPA. . . for the following non-exhaustive list of reasons:

- Cutlery is not Biodegradable and may not be so represented as a matter of law, because it does not completely decompose within five (5) years.  See *ECM Biofilms, Inc.,* cited *supra.*

- Cutlery is made from polyethylene thermoplastic made from petroleum, is non-biodegradable, can take centuries to decompose, and the purported EcoPure additive does not render Cutlery "biodegradable."

- FTC has cautioned against the use of unqualified "green" claims and has conducted extensive testing as to polyethylene additive technology specifically, that has been validated upon exhaustive review by the Sixth Circuit Court of Appeals.

42.  The practices identified herein throughout violate the Federal Trade Commission's rules and formal guidance relating to "claims about the environmental attributes of a product,"[6] as well as those addressing

---

[6] Revised Guides For The Use Of Environmental Marketing Claims (FTC 2012)("Green Guides"), reprinted at https://www.law.cornell.edu/cfr/text/16/part-260

internet advertising,[7] including:

- **12 CFR Part 260, at §260.8(c):** It is deceptive to make an unqualified degradable claim for items entering the solid waste stream [as T2E does regarding Cutlery] if the items do not completely decompose within one year after customary disposal. Unqualified degradable claims for items that are customarily disposed in landfills, incinerators, and recycling facilities are deceptive because these locations do not present conditions in which complete decomposition will occur within one year.

- FTC has long required that "[m]arketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims." See FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984). A reasonable consumer would believe, based upon Defendant's advertising and packaging, that Cutlery fully decomposes in the landfill within five (5) years at the outside, leaving no microplastics behind.

- T2E's representations of EcoPure Technology efficacy are directly contradicted by the FTC's thoroughly-litigated positions in both administrative and judicial for a vis-à-vis ECM technology; and they find no support in their own manufacturer's promotion of the additive.

43. Washington courts have historically followed the FTC pronouncements as to deceptive sales and marketing practices: "CPA

---

[7] Disclosures: How to Make Effective Disclosures in Digital Advertising, reprinted at https://www.ftc.gov/system/files/documents/plain-language/bus41-dot-com-disclosures-information-about-online-advertising.pdf ("Ad Guide")

was initially adopted in 1961 and modeled generally after section 5 of the Federal Trade Commission Act (FTCA)." *State v. Living Essentials, LLC*, 8 Wash. App. 2d 1, 16, 436 P.3d 857, 865 (2019)

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of himself and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

45. The Class ("Class")  that Plaintiff seeks to represent, subject to amendment following appropriate discovery, is defined as follows:

All persons who, in the United States, on or after four years preceding the commencement hereof, purchased online, from https://transitions2earth.com any of the products identified in ¶2 above.  ("Class").

46. Excluded from the Class are (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Product; and (c) the Judge to whom this case is assigned.

47. Numerosity/Impracticability of Joinder:  T2E has annual sales exceeding $5,000,000.  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed

14

Class includes, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control.

48. <u>Commonality and Predominance</u>:  There are common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to the following:

    a.    whether T2E engaged in a pattern of fraudulent, unfair, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion and/or sale of the Products;

    b.    whether T2E's acts and omissions violated WCPA;

    c.    whether T2E made material misrepresentations of fact or omitted material facts to Plaintiff and the Class regarding the marketing, promotion, advertising and sale of the Cutlery, which material misrepresentations or omissions operated as deceptive sales practice Plaintiff and the Class;

    d.    whether T2E's false and misleading statements of fact and concealment of material facts regarding the Cutlery were intended to deceive the public;

    e.    whether the market value of the goods delivered to Plaintiff and Class members was less than the goods promised to be delivered or, alternatively, whether Plaintiff and the Class members paid more for products than the price of similar non-biodegradable products available from competing sellers;

f.　　whether T2E's acts and omissions deceived Plaintiff and the Class;

h.　　whether T2E misrepresented Product as biodegradable;

i.　　whether the very tradename "Transitions2earth" is a deceptive or unfair practice in the context of this case;

j.　　whether T2E's lack of prior substantiation for its Claim was in itself a deceptive practice under law;

k.　　whether, as a result of T2E's misconduct, Plaintiff and the Class are entitled to equitable relief and other relief and, if so, the nature of such relief; and

l.　　whether Plaintiff and the members of the Class have sustained ascertainable losses and damages as a result of T2E's acts and omissions, and the proper measure thereof.

49. Typicality:  Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent.  Plaintiff and all Class members have been injured by the same wrongful practices in which Defendant has engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

50. Adequacy:  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained Class counsel who are experienced and qualified in prosecuting class

actions.  Neither Plaintiff nor his attorneys have any interests which are contrary to or conflicting with the Class.

51. <u>Injunction</u>:  Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

52. <u>Management/Superiority</u>:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit,  because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court systems in New York and throughout the United States  would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized

litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  Plaintiff will not have any difficulty in managing this litigation as a class action.

## COUNT I:

### Wash. Rev. Code §§ 19.86.010 through 19.86.920 Consumer Protection Act . . Damages

53.  Plaintiff incorporates by reference and re-alleges paragraphs 1 through 52 as if fully set forth herein.

54.  In order to bring a private claim under the WCPA, a plaintiff must allege that defendant's actions constitute: (1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) which injury is causally linked to unfair or deceptive act. *Hangman Ridge v. Safeco Title,* 105 Wn. 2d 778, 784-85, 719 P.2d 531 (1986)"  *Abbouds' McDonald's, LLC v. McDonald's Corp.*, No. CV04-1895P, 2005 U.S. Dist. LEXIS 30185, at *9 (W.D. Wash. Feb. 15, 2005)

55. T2E falsely represents that the Cutlery at issue herein is Biodegradable in order to affect sales of Cutlery.

18

56.  Defendant's conduct by way of its affirmative representations and non-disclosures misled Plaintiff and are and were likely to mislead a reasonable consumer, i.e. has the capacity to deceive a substantial portion of the consuming public so as to satisfy the "unfair" or "deceptive act" element of a private cause of action under WCPA.  *Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318, 814 P.2d 670, 1991 Wash. App. LEXIS 287 (Wash. Ct. App. 1991).

57. T2E intentionally or with reckless disregard of the consequences used its tradename "Transitions2earth" and the word "biodegradable" to deceive the purchasing public.

58.  Given T2E's multiple biodegradable representations, the tradename "Transitions2earth," and Defendant's presence throughout ecommerce, additional persons have been or will be injured in the same fashion as Plaintiff.

59.  Plaintiff and the Class suffered harm as a result of Defendant's statutory violations in that they purchased at a premium price Cutlery which they would not have purchased at such premium price but for Defendant's misrepresentations and failures to disclose.

60. The fair market value of the Cutlery purchased by the Plaintiff and the Class was substantially less than the premium price paid. Consequently, Plaintiff and the Class suffered out of pocket loss and diminution of value loss as a result of Defendant's violations of WCPA,

61.  There are many alternative Cutlery brands available online at substantially lower price points than the price of T2E Cutlery; however, T2E deceives the public into paying a surcharge with one word: "biodegradable."  Thus T2E charges roughly $.05 per utensil

for a medium weight standard, non-biodegradable product,[8] whereas a comparable Settings brand fork costs $03 per utensil;[9] and a genuine "Avant Grub" biodegradable fork made from corn resins costs about $.08 per utensil.[10]

62. Accordingly, plaintiff and the Class were injured by paying a premium of about 67% for what T2E did deliver; and what T2E did deliver had a fair market value of about 62½ % of what they paid to receive.  Either way, Plaintiff and the Class were injured by an insufficiency of consideration and were short-changed on the benefit of their bargain.

63. Through complained-of deception Defendant induced the plaintiff to purchase Cutlery, by which purchase Plaintiff was injured; and Defendant's conduct is currently being repeated and will continue until resolved in this proceeding.

---

[8] https://www.amazon.com/Transitions2earth-Biodegradable-EcoPure-Forks-Purchased/dp/B002YH36EY/ref=sr_1_7?crid=261YGEK3JATVF&keywords=transitions+2earth+forks&qid=1649344913&sprefix=transitions2earth%2Caps%2C93&sr=8-7
[9] https://www.amazon.com/Settings-Cutlery-Forks-Disposable-Plastic/dp/B00ZCR48B8/ref=sr_1_13?crid=2TWAADN5C0B9Z&keywords=plastic%2Bforks&qid=1649345070&sprefix=plastic%2Bforks%2Caps%2C72&sr=8-13&th=1
[10]
https://www.amazon.com/dp/B07933CWT1/ref=sspa_dk_detail_3?pd_rd_i=B07933CWT1&pd_rd_w=QfMM0&pf_rd_p=bfad43d3-6322-44f4-bdfb-4d89e9d14ab2&pd_rd_wg=u4w4d&pf_rd_r=XY3W8PZH4H6D6XBV049V&pd_rd_r=70787cab-81a8-4620-ae6b-c28000848f2e&s=kitchen&spLa=ZW5jcnlwdGVkUXVhbGlmaWVyPUEzVFY3V0dWMFdKNFVHJmVuY3J5cHRlZElkPUEwOTM0MzAyOE1SOFdMUjc4MzNUJmVuY3J5cHRlZEFkSWQ9QTAzOTI1NTYzVkw2WE5BWFlQSjhVJndpZGdldE5hbWU9c3BfZGV0YWlsX3RoZW1hdGljJmFjdGlvbj1jbGlja1JlZGlyZWN0JmRvTm90TG9nQ2xpY2s9dHJ1ZQ&th=1

## COUNT II

### Wash. Rev. Code §§ 19.86.010 through 19.86.920 Consumer Protection Act . . Injunction

64.  Plaintiff re-alleges all preceding allegations as though set forth at length.

65.  Plaintiff is entitled to obtain injunctive relief to protect the public from T2E's deceptive practices.

66.  Plaintiff is entitled to an injunction against Defendant's use of the Biodegradability Claim on packaging, marketing, labeling or advertising materials encountered by potential purchasers of the Cutlery.

67.  Plaintiff is further seeking an order enjoining Defendant's violations of the WCPA including, but not limited to, an order:

(a)     Requiring Defendant to immediately remove all advertisements, packaging and labeling of the Cutlery that contain the Claim, i.e. biodegradable, degradable or the like;

(b)     Requiring Defendant to prominently disclose on its proprietary website and on the front of the product labels and product packaging in bold print and large font that "**THIS PRODUCT IS NOT BIODEGRADABLE**" in order to cure the false advertising Defendant has been disseminating for years.

WHEREFORE Plaintiff prays as follows:

a.  An order certifying this case as a class action, designating Plaintiff as the representative of the Class and his counsel as class counsel;

b. A permanent injunction against T2E affording the relief specified in paragraph 67 hereinabove and such other and further injunctive relief as the Court may deem necessary and appropriate;

c. Actual damages for Plaintiff and the Class;

d. Attorney fees; and

e. Costs.

## JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

/s/Mark Schlachet
43 West 43rd Street
Suite 220 New York,
New York 10036-7424
(216) 225-7559
Email: markschlachet@me.com

9511 Collins Ave.-Ste. 605
Surfside, FL 33154

*Attorney for Plaintiff*